Good morning, Your Honors. How are you? Martin Robles for the Petitioner, Riyaz Sharifi. May it please the Court. Your Honor, the sole remaining issue in this case is whether or not the Board properly adopted the IJA's conclusion that the Petitioner had abandoned his applications for withholding of removal under the INA as well as the Convention Against Torture and Voluntary Departure due to abandonment for his failure to have been fingerprinted in accordance with the judge's notice of hearing. Our position is that both the IJA's and the Board's decisions cannot be supported upon the basis which they purport to be sustained. Whether under an abuse of discretion or a de novo with deference where warranted to the Board, it would still constitute error. The Board adopted the IJA's decision expressly to the extent that the Petitioner had abandoned his applications and the Board cited to 8 CFR 1003.31c, which is a regulation that simply doesn't even apply. The regulation applies to the timely filing of applications and documents which the Petitioner complied with. So that particular regulation simply doesn't support the conclusion that the Board came to, and the Board abuses its discretion whenever it acts contrary to law. And for that reason, the Board's decision is simply in error. In addition, the IJA referred to two separate regulations. One of them applied to proceedings before an asylum officer, which the Board expressly disavowed. The Board said the Petitioner was correct that that regulation did not apply, so the Board then substituted with the regulation I just described, 31c. The IJA also referred to another regulation, 1003.10, which says that judges shall exercise the powers and duties in this chapter regarding the conduct of removal proceedings. At the time, there was not a regulation in effect that expressly covered the situation, the factual circumstances here. Six months after the IJA's decision, which was in October 2004, the Department of Justice implemented new regulations, which are at 8 CFR 1003.47. They became effective April 1, 2005. Those regulations authorized the IJA to deem an application abandoned if the Petitioner or the alien fails to be fingerprinted in accordance with the order. Notably, those regulations require the judge mandatorily under subsection D to advise the Petitioner of the consequences of failing to do so. This particular record is very, very sparse. There's only one transcript of one hearing. There were approximately three or four other hearings, none of which were transcribed for the record. So the record is very thin. We don't know when the, I mean, the Petitioner, we don't know if the Petitioner was ever given any warnings in court, because they're simply not a part of the record. And because the boards and the IJA's decision rested on the wrong regulations or regulations that simply didn't apply, it's our position that the board abuses discretion in adopting the IJA's conclusion. And for that reason, the board's decision should be reversed. And to answer Your Honor, Judge Bright's question from earlier, I would ask that you send this case back to the IJA so that the Petitioner can have an opportunity to present his application for relief. We think the IJA clearly abused her discretion. Excuse me, Your Honor. Were you with the attorney? No, I was not, Your Honor. Can you tell me from the record whether or not the attorney who represented your client at that time had an opportunity to address the board's legal conclusion that a different regulation applied? No, it did not. So in other words, the IJA made a decision, the case is appealed to the BIA, the BIA then decides on a different ground, and your position is from the record that your client did not have an opportunity to address that. Is that right? That is correct, Your Honor. All right. Let me ask you another question. On appeal to the BIA, the issue was raised that the IJA abused his or her discretion, I can't remember whether it was a man or a woman on this one, in this case, by failing to grant a continuance. Is that issue before us now or not? Your Honor, interestingly, the board did not adopt that part of the decision. Well, the board didn't address it at all. The board didn't address it at all, Your Honor. And, of course, the IJA, when you're complaining about something due process there, it's up to the BIA to address that in the first instance, not the IJA. We've held that it's required to. So the board doesn't address that issue that's live. Where is that issue now? Which issue, I'm sorry, Your Honor? The question of whether or not there was a due process violation by failing to grant a continuance. Did you abandon that issue on appeal or not? Well, I think we, I mean, the issues are intertwined, I think, because it's an abuse of discretion. I mean, I think we elected to proceed with the due process violation as a consequence of the regulation rather than the continuance. The IJA doesn't really exercise any discretion. The only hint of discretion is, she says, for good cause shown. But there's no weighing of any factors or anything as would normally be encountered in an exercise of discretion. I guess to answer your question, we did not raise that issue before this Court, so. Okay. Very good. What is your position that either the regulations or the statute are inapplicable to the statute? What is the situation we have in this case? Every regulation cited by the IJA or the Board are either inapplicable or are not sufficient to sustain the IJA's specific conclusion that the petitioner abandoned his applications. And as I said, there is now a regulation which expressly covers that situation. And interestingly, the Board didn't address that regulation in its December 2005 decision when this regulation became effective in April 2005. Well, with the regulation, if we send it back, would the regulation apply now? I don't think that it would. I think the Board would have to send it back to the IJA. I mean, I don't know that the Board could apply the regulation. I think the Board would have to send it back.   Is there a possibility that the petitioner should have been in a position, either on due process or that the petitioner should have had a chance to correct the failure to have his fingerprints taken because he never had been given adequate warning? And secondly, there was some discussion at the hearing that he should get a day to put in the fingerprints? In fact, Your Honor, he did the following day go get his fingerprints, as he had asked the judge to allow him to do. So it was done, although it was done the day after the IJA ordered it. And the IJA rejected that? Well, the IJA had already entered her order of removal the day before. Okay. So the finger, but the IJA would not give him an opportunity. And there was not, and your client, basically your client is saying he had good cause for not having his fingerprints available at the hearing. That's correct, Your Honor. Okay. No, just for your comfort, that mic will pick up. You don't have to distort yourself. I'll reserve the rest of my time for rebuttal if you have more questions. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, Lee S. Mercy of the Office of Immigration Litigation, for the respondent. Nice to see you again. That's when you get sent out. You get multiple cases. So she appeared before us yesterday. Thank you. And I'd like to thank Your Honors as well for allowing me to use my laptop after I had a bit of a computer issue this morning. In the case before the Court today, there's one main issue. Whether the immigration judge acted within her wide discretion, within her authority, when she found the petitioner had abandoned his applications for relief, whether the petitioner failed to submit his fingerprints in a timely manner when ordered to do so by the Immigration Court. You know, here's the question I have at the onset. The immigration judge relies on one statute. I'm sorry, one regulation. And that regulation says quite clearly that failure to comply with the processing requirements will result in dismissal of the application. That's the regulation that the IJ relies on. The Board says, well, that's the wrong regulation. The IJ could not have, should not have relied on that. But there's a different regulation. And if I look at that one, it doesn't say dismissal at all. What it says is that the time may be, the immigration judge may set an extended time for filing of applications and related documents. And if it's not filed within that time, the document, the opportunity to file the document may be waived. It doesn't say anything about dismissal of the case. But the pivotal issue is whether or not the IJ abused her discretion in deeming the petition abandoned. Now, that would be proper under the regulation the IJ was relying on, but wouldn't be proper under the regulation that the Board cited. There's nothing about abandonment in that regulation. But I think that the two regulations work together. No, they don't, because the first one's about an asylum officer and the second one's about an IJ. Well, I'm sorry, I thought you were talking about the other regulation that was cited by the immigration judge, giving the immigration judge the power to conduct removal hearings. In that particular regulation under Part B, the regulation states that the immigration judge shall exercise their independent judgment and leave the petition. Now, in that context, the immigration judge has the ability to set time limits on to when the application, the asylum application is complete. And in this particular case, the complete application would include the fingerprints. Right, but the difference, though, is this. Under the first theory, if you're talking about an asylum officer, at least by regulation, counsel and the petitioner's on notice. If you don't file that, your petition's going to be dismissed in its entirety. The second one is more of a filing deadline, saying you can set it or not. It doesn't contain the same warnings that if you don't provide it by this date, it's going to be dismissed. That doesn't say anything about fingerprints, just says that you can make requirements. Neither say anything about fingerprints. Well, the immigration judge in their decision, they also cited INA 28D1, which is 1158D1 under the USC code, which specifically provides for fingerprints in the filing of an asylum application. It specifically states under the asylum application procedure, and of course, in filing for withholding of removal or cap protection, you file it under an asylum application. That particular statute states, the attorney general shall establish a procedure for the consideration of asylum applications filed under subsection A of this section. The attorney general may require applications to submit fingerprints and a photograph at such time, and in such manner determined by regulation by the attorney general. So, I mean, I believe what I'm getting at here is that it's within the discretion of the immigration judge to set those time limits, and to state that, they have the authority to say, we demand that you file this application by this date. And certainly the board clarified that by its citation to the other regulation, but it wasn't necessarily, they didn't change the playing field, is the way that I would put it. The issue is still the same. Did the immigration judge have the authority to set that time limit? And in that they did, did they properly waive the, I'm sorry, pre-dermit the application for relief? And in this particular case, the government's position is that they did. So the pertinent regulations, as I'm saying, give the immigration judge the explicit authority to terminate applications, and to set the time limits, as I was saying. And the petitioner, as well as his counsel, were on notice that he had to comply with this court's, with the immigration court's ruling. Let's make sure we know what happened in this case. The notice to appear was sent by whom? The clerk's office, or the, was it signed by the judge? Do you know? I would have to, I believe it has a certificate of service on the bottom. And the certificate of service is proof of service. I'm sorry? Who signed it and who issued it? I would have to look at the record again to determine who exactly signed it. But I do know that it was properly served. No, there's no question about that. There's no question about that. But the regulation says the IJ has the authority to set time limits. The IJ may or may not have signed the notice to appear. The notice of the hearing? Yes, I mean, that's the only thing that's at issue. He says the notice to appear says you should get your fingerprint signed in 14 days. And then shows up for the hearing, and they say, why wasn't it done? And he said, they didn't tell me to. And then he denies it continuously and said, you're out of here, you've abandoned your application, you didn't get your fingerprints done. Right? That's basically what happens. I would acknowledge that. But the notice of the hearing is essentially, in each, I think that the immigration court's procedure for setting the hearing is that the immigration judge is the person who's setting the hearing in their calendar docket. It's simply not. Why are you speculating now? My question to you is, did the IJ personally sign the notice of the hearing in this case or not? You don't know. I don't. I can look at the record if you give me a moment to look at it. You can supplement it, too. I don't want to take your argument time. You can point us to it. But given that the immigration judge did or did not sign that notice of the hearing, he certainly is the person who set the date of the hearing in which he would hear this particular case. And as he mentioned directly in the order, he stated specifically that I required, within his authority, that the fingerprints would be required within 14 days of the notation of 5-18-04, May 18-04, which the petitioner failed to do. I think as we cut through this, the problem with this case is this seems an awfully harsh result that we don't see in many cases. We usually see, if someone doesn't bring the documents or fingerprints, we see continuances granted. Now, the IJ didn't grant a continuance in this case. That issue apparently isn't before us. But it's an awfully technical way to throw out an application when the petitioner says, well, I didn't understand that. And that's, I think, the aspect of it that gives rise to concern. Now, if it had been a straight-up affirmance by the BIA, that would be one thing. But the BIA then strikes out in a different direction and cites a different regulation, and the petitioner doesn't have the opportunity to respond. So those are my concerns. I'm not saying this presents sort of a peculiar case. But those are the things that bother me, at least, on this. I'll tell you what bothers me, too. I don't want to address it. The IJ was citing Regulation 1208.10, which has a waiver, but it also has a provision, failure to comply without good cause. And it seems to me when the IJ was ruling on this, and the IJ was ruling on this, and the IJ was ruling on this, and the claim was made, and I didn't get notice, and can we have a one-day adjournment, that the IJ denied the good cause reason, and therefore would be erroneous under the regulation which the IJ tried to apply. Well, first of all, I would state that the petitioner says he somewhat gets to this in his brief, but, I mean, primarily he's challenging the immigration judge's authority to do this, which I think that the government has established that the immigration judge does have the authority to do that. But I think that to take your point there as to this good cause reason, I believe that the immigration judge in their decision, they very clearly delineated their reasons that they were stating that this continuance was being denied. I mean, they had given clear notice to the petitioner that they had to file the fingerprints. And this case would not have been cleared. No, it was just clear notice. I didn't get this clear notice. I thought the notice was some statement on the face of the envelope, and we're not sure who put that on. Well, specifically what happened, if you look back to the record and to the transcript of the particular hearing on October 18, 2004, Mr. Tarifi actually acknowledged that he had received the notice of the hearing. He was on notice that he had to file his fingerprints. And the only reason that he gave was that the last time I was at the office, presumably his lawyer's office, they said you don't have to do it, which the immigration judge in her decision specifically stated the petitioner had notice. They realized that they had to file the fingerprints. The date of the hearing was October 18, 2004. The notice of the hearing which stated they had to get the fingerprints was October 22, 2003. They had almost, from October 22, 2003 until May 18, 2004 to get these fingerprints for them to be timely in this, in the hearing, for it to be within the 15 months for these fingerprints to be valid. That's a huge amount of time in which the petitioner could have gotten the fingerprints. Therefore, I would dispute that it would be any abuse of discretion for the immigration judge to state that the petitioner could have gotten the fingerprints. I would also dispute that it would be any abuse of discretion to deny the continuance on this particular case. I mean, the docket, as Your Honors probably well know, the immigration court's docket is very heavy. They don't have a lot of time, and they do set these limits so that these cases can move forward in a timely manner. The NTA in this, the notice of, the notice to appear in this case occurred on January 10, 2003. This case had been pending almost two years by the time they got to a merits hearing. Go ahead. This case may turn on one very narrow question. You, there was a different regulation, and there was a request for additional time, 24 hours the next day. It wasn't granted, and we're going to have to decide whether that can be, that's so or not. The one where he would have had notice that his fingerprints were required was not the regulation under which this case was decided. Isn't that right? Do you mean, I'm sorry, which regulation are you referring to? IJU's wrong regulation, didn't he? Yes, that was referred to as the asylum officer. And so does that change the posture of the case, and does it change your position as you argue it? No, I believe it doesn't, because as was argued in the brief. What would be the reason for that? Why would it not change? The petitioner in this particular case, I think the relevant question here is whether or not the petitioner was on notice that he had to file these fingerprints. And the immigration judge had the authority to issue that notice and state at this date you have to submit those fingerprints. But the, you know, I'm looking at the document now. The immigration judge did not issue the order. All it is, it's a stamp on a form. It says fingerprints required within 14 days, right? Just stamped there. And there's no signature anywhere by the immigration judge. So when the Board of Immigration Appeals, and I'm not saying that that, you know, you have good arguments that that applies. But my problem is the Board of Immigration Appeals then relies on this other statute that wasn't at issue and didn't give the petitioner the opportunity to say, wait a minute, this doesn't apply, because, for example, the IJ didn't set the limits. It was just set by someone else in the clerk's office. It was not done under the authority of the IJ. Because this form does not come from the IJ. It comes from the Executive Office for Immigration Review. It's a clerical form that's sent out, which you may have a good argument on it. But the petitioner didn't have a chance to address the argument. I don't have the particular regulation in front of me, but in general, an immigration judge is given the authority to continue a hearing from date to date under the regulations. And then the board didn't address the petitioner's argument that the IJ abused her discretion in denying the continuance. Now, if the board had, we'd be in an entirely different situation here. But the board didn't address the argument at all. Well, the board adopted and affirmed the immigration judge's decision. That's like, that is essentially an implicit agreement with what the immigration judge did. Well, with this difference, though, that we've held, that when there's a due process argument made as a result of, directed to the actions of the IJ's conduct of the hearing, that the board can't do that, that the board has to address it, because otherwise there's no administrative review of what happens. The IJ is making a decision, but if there are questions raised about the denial of counsel, about whether or not due process was held in the hearing, procedural due process questions, such as the ones that were raised with the board, the board has to address it. The board didn't address it in this case. Now, he hasn't raised that on appeal, but it certainly adds another element of concern in this case. Certainly. I would also state that, if I'm correct, I just have a brief summary of what the petitioner argued before the board. But what they essentially argued before the board was simply the abuse of discretion as to the motion to continuance of denial of the immigration judge. Their due process argument was simply challenging the application of the regulation, which I would make that distinction, that they weren't necessarily challenging the immigration judge's decision to deny the motion for continuance under anything except for abuse of discretion. But as I was stating before you may have a point that they didn't frame it in a due process context, but in any event the board didn't address that question at all, whether or not the I.J. abused her discretion, right? But if they're stating in their, if they're adopting and affirming the immigration judge's decision, again, it's essentially stating that we agree with the immigration judge's decision. The process of streamlining allows the board to adopt and affirm the immigration judge's decision. In this particular case they added some language there, but it's not necessarily that they needed to address that argument in detail, I guess is what I would state here. I've taken you over your time again with my questions. Do you have anything else you want to talk about? No, Your Honor. So just to conclude, the immigration judge did not abuse her discretion and was within her authority in finding the petitioner's fingerprints taken with the time order amounted to abandonment of his claims for relief and protection. Thank you very much. Your Honor, just briefly, 208D1, the statute, the statutory provision only applies to asylum. It actually says it only applies to applications under 208A. The petitioner wasn't applying for asylum, he was ineligible for asylum due to the one-year bar. As well, the I.J. did ignore a number of factors. She ignored the fact that the petitioner effectively brought himself to the attention of the agency by complying with the NSEERS program, special registration. He himself brought himself to the attention of the government. He attended all of his previous hearings. He timely filed his applications. The I.J. just simply found that he was trying to circumvent the local rules. I mean, she imputed a pernicious motive to him that was simply unwarranted. And she really didn't balance any of those factors at all. So even under, again, under an abuse of discretion standard, she clearly abused her discretion. And the case was only 18 months. I mean, in the life of an immigration case, that's a pretty short amount of time. I mean, the first hearing, I believe, was in April of 2003. And then by October of 2004, she had already... The case isn't going to turn on that, though, is it? Excuse me, Your Honor? The case isn't going to turn on that, is it? No, it's not, Your Honor. I'll just... Yeah, that's true. But your problem is, one way or another, there was a stamp that said the fingerprints are required, and it may have been a harsh result, but the I.J. is certainly entitled to set some time limits. Wouldn't you agree? No, I do agree with that, Your Honor. But I think that the basis that she used simply doesn't support the harsh result that she imposed on the Petitioner. I would quote to Judge Posner, who said that an immigration court is not a small claims court, and that rejection, mistaken rejection, can doom an applicant. With that, Your Honor, I would ask that you send this case back to the immigration judge. Thank you both for your arguments, your presentation, and we'll take a short recess. Thank you.
judges: Farris, Thomas, Bright